IN THE
UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
BILLINGS, MONTANA

| | |
|---|---|
| LIONEL SCOTT ELLISON,<br>     Plaintiff,<br><br>  -vs-<br><br>THE STATE OF MONTANA;<br>MONTANA ATTORNEY GENERALS OFFICE;<br>AUSTIN KNUDSEN, [MT.ATTY.GEN.];<br>PATRICK J. MOODY, [ASST.MT.A.G.];<br>MONTANA DEPT. OF CORRECTIONS;<br>MONTANA STATE PRISON, [MSP];<br>JIM SALMONSEN, [WARDEN, MSP];<br>SGT. SUSAN MOLENDYKE, [MSP GUARD];<br>SGT. STEVE ELLIOTT,[fmr MSP GUARD];<br>SGT. LARRY PASHA, [MSP GUARD];<br>WESLEY E. SOMOGY, [DOC ATTY];<br>CORECIVIC, INC. [TN PRISON CORP.];<br>CROSSROADS CORRECTIONAL CENTER[CCC];<br>PETER BLUDWORTH, [CCC WARDEN];<br>Ms. WAHN, [CCC ACCTS. CLERK];<br>YELLOWSTONE COUNTY, [MT];<br>MULTIPLE JOHN DOES,[MT & COUNTY];<br>MULTIPLE JANE DOES,[MT & COUNTY];<br>     Defendents. | CIVIL RIGHTS AND<br>CRIMINAL COMPLAINT<br>PURSUANT TO:<br>TITLE 42, USCS, CHAP.21<br>§§1981, 1983, 1985,<br>1986, 1987, 1988; and<br>42 USC §§12101-12213,<br>[§12202, STATE IMMUN.];<br>28 CFR §§35.101-35.209,<br>[§35.178, STATE IMMUN];<br>AND<br>TITLE 18. CRIMES.<br>§§241, 242, 371, 373,<br>401, 402, 1001, 1505,<br>1506, 1509, 1512, 1513,<br>AND 1964[R.I.CO.];<br>AND 18 USC §3041,<br>[POWER OF JUDGE TO<br> ORDER ARREST OF DEF.].<br>REQUESTING JURY TRIAL,<br>AND INJUNCTIVE RELIEF, |

| | |
|---|---|
| PLAINTIFF, Pro Se:<br>Lionel Scott Ellison, #3003002<br>Confined at:<br>Montana State Prison<br>700 Conley Lake Rd.<br>Deer Lodge, Montana 59722 | DEFENDENTS:<br>Austin Knudsen, MT.ATTY.GEN.<br>P.O.Box 201401<br>Helena, Montana 59620-1401<br>[For Montana Defendents]<br>CoreCivic, Inc., Legal Dept.<br>5501 Virginia Way, Ste 110<br>Brentwood, Tennessee, 37027 |

REQUESTING CRIMINAL ARRESTS WARRANTS, AS REQUIRED 42 USC §1987
OF DEFENDENTS.

Submitted and Executed to the Court, this    day of June, 2024.
COVER

## I. JURISDICTION AND VENUE.

1) The civil action portion of this complaint, is brought forth as authorized by:

   a) 42 USC §1983. Civil Action for Deprivation of Rights.

   b) 42 USC §1985. Conspiracy to interfere with Civil Rights.

     (2) Obstructing Justice; Intimidating party, witness, or juror.

     (3) Depriving persons of Rights or priveleges.

   c) 42 USC §1986. Action for neglect to prevent conspiracy.

   d) 42 USC §1987. Prosecution of violation of certain laws.

   e) 42 USC §1988. Proceedings in vindication of Civil Rights.

2) This civil action is also brought forth in Violation of Equal Opportunity for Individuala with Disabilities. "The Americans with Disabilities Act", [ADA].

   a) 42 USC §12102, et seq. Most noteably:

     1) §12101. Findings and Purpose.

     2) §§12131-12134. Prohibitation against Discrimination and other generally applicable provissions.

     3) §12202. State immunity. "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this Act."

     4) §12203. Prohibition against retaliation and coercion.

       a) Retaliation. "No person shall discrimunate against any individual because such individual has opposed any act or practice made unlawfully by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act."

       b) Interference, coercion, or intimidation. "It shall be unlawful to coerce intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his having aided ot encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act."

       c) Remedies and procedures. [See the Civil Rights Act of 1964].

   b) Codes of Federal Regulations. 28 CFR §35. Nondiscrimination on the Basis of Disability in State and Local Government Services. et seq.

   Noteably; 28 CFR §35.161. Telecommunications. [Lack of available TTY phone]

       28 CFR §35.178. State Immunity. "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State Court of competent jurisdiction for violation of this Act. In any action against a State for violation of the requirements of this Act, remedies are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

3) The criminal charges action portion of this complaint is authorized by:

   a) 18 USC §3041. Power of courts and Magistrates. [Chapter 203, Arrest...].
   "For any offense against the United States, the offender may, by any justice
   or judge of the United States, or by any United States magistrate...of any
   State where the offender may be found, and at the expense of the United States,
   be arrested and imprisoned...
   A United States judge or magistrate shall proceed under this section according
   to rules promulgated by the Supreme Court of the United States."

4) The relevent criminal offenses committed by the Montana Defendants include, but
not limited to are as follows:

18 USC §241. Conspiracy against Rights.
18 USC §242. Deprivation of Rights under color of law.
18 USC §371. Conspiracy to Commit offense or to defraud United States.
18 USC §373. Solicitation to commit a crime of violence.
18 USC §401. Power of Court. [Contempts].
18 USC §402. Contempts constituting crimes. "Any person,...willfully disobeying
            any lawful writ, process, order, rule, decree, or command of any
            district court of the United States...by doing such any act or thing
            therein, or thereby forbidden, if the act or thing so done be of
            such character as to constitute also a criminal offense under any
            statute of the United states...shall be prosecuted for such contempt...
            and shall punished by fine...or imprisonment..."
18 USC §1001. Statements or entries generally. [Fraud, Fraud on the Court].
18 USC §1505. Obstruction of proceedings before departments, agencies, and committees.
18 USC §1506. Theft or alteration of record or process...
18 USC §1509. Obstruction of Court Orders.
18 USC §1512. Tampering with a witness, victim, or an informant.
18 USC §1513. Retaliating against a witness, victim, or an informant.

5) In relation to Criminal acts previously committed by Yellowstone County, Montana
public officials, and law enforcement; and as conceded to and waived by the prior
(D) Montana Attorney General, Timothy Fox's Sr. Deputy, C. Mark Fowler, as well
as the (D) MT.A.G.'s waiving that the Plaintiff is wrongfully convicted under
the Fifth Amendments Double Jeopardy Clause and Due Process Clause, as enclosed
in the Fourteenth Amendments Equal Protection Clause. The present (R) Montana
Attorney General, Austin Knudsen, and the other Montana defendants did jointly
commit the above criminal acts in a conspiratorial manner, as documented.

6) The Court has the jurisdiction to adjudicate this matter under 28 USC §1331,
and 28 USC §1343(a)(1-3). Plaintiff Ellison seeks declaratory relief pursuant to
28 USC §2201, and §2202; and also under 18 USC §1964, Civil R.I.C.O.

7) Plaintiff requests that the civil portion be presented to a Jury of his peers.

8) Plaintiff Ellison claims for relief and Protection by the Court from further
retalitory acts, by the Court issuing a Temporary Restraining Order as is further
authorized under 28 USC §2283 and §2284, under Injunctive Relief, and Rule 65 of
the Federal Rules of Civil Procedure. [FRCP].

9) The District of Montana, Billings Division, is the appropriate venue under
28 USC §1391(b)(2), because it is where these events giving rise to this action
began.

## II. PLAINTIFF.

10) The Plaintiff, Lionel Scott Ellison, is and was at times mentioned herein, a prisoner of the State of Montana; and the County of Yellowstone in Montana. The Plaintiff was, a resident of Yellowstone County at the time of his arrest. The Plaintiff is now in custody of the Montana Department of Corrections, and the custody of the Warden, at the Montana State Prison, in Deer Lodge, Montana. The Plaintiff has been in the custody of MSP for three months in D unit. Prior to that the Plaintiff was in the custody of Crossroads Correctional Center in Shelby, Montana; for 12th months, in the custody of CCC Warden, Peter Bludworth. Prior to being transfered to the custody of Warden Bluworth, the Plaintiff was previously in the custody of Montana State Prison, in Deer Lodge, Montana from approximately December of 2015. Prior to that time the Plaintiff was in the custody of Yellowstone County, representing the State of Montana, since the time of his arrest in July, 2014. The Plaintiff is legally deaf, from having Scarlet Fever as a youth, and from damage done when a car's trunk exploded while the Plaintiff was driving.

## II. DEFENDENTS.

11) Defendent, the State of Montana, is a government entity of the United States, and has many government departments and individuals under the supervision of it's three branches of government. These being the Executive Branch, overseen by the Governor of the State as elected by the Public. The Legislative Branch as being the House and Senate, with multiple committes headed by the Public, and representing Political Parties [Democrat & Republican]. The Judicial Branch of the State, which includes jurists and prosecutors, representing the State in Courts of Law, to abide by the laws as written by the State Legislature, and then ratified by the State Executive, the Governor. A checks and balances system of government. The State is responsible for the acts of its employee's and has enjoyed immunity, except in a rare occasion, in extraordinary circumstances. This matter concerns ADA violations which the United States Congress has ruled that a State, it's entities, and government employee's do NOT have immunity under the Eleventh Amendment of the United States Constitution. See this Complaint's Standard of Review section for controlling Federal Statutes and relevent caselaw.

12) The Montana Attorney Generals Office, is a State Government entity, headquartered in the Montana State Capital in Helena, Montana, as counsel for the State of Montana in all matters concering the State, as an elected official and who hires others to assist him, under the authority of this office, as his 'Elected Franchise'. That entire 'Elected Franchise' are also named defendents.

13) Defendant, Austin Knudsen is the present elected Montana Attorney General, who was elected through the Montana Republican Party. Mr. Knudsen is responsible for all acts and omissions by the persons within his 'Elected Franchise'. Mr. Knudsen represents the State of Montana as counsel, and his acts and omissions as well as his staff, are done under the professional umbrella of State Laws and State Rules. These Rules include the Rules of Professional Conduct by an Attorney, which he MUST abide by, which govern the conduct of all attorney's and in which he cannot be excused from obeying, as an official elected by the Public of Montana. Mr. Knudsen and his staff can NOT claim immunity under the Eleventh Amendment, as held by Congressional Law, in a matter such as this. [See Standard of Review, 42 USC §12202 and 28 CFR §35.178].

14) Defendant Patrick J. Moody, is an assistant to Austin Knudsen, at the Montana Attorney Generals Office; in Helena, Montana. Mr. Moody is responsible to the (R) Montana Attorney Gerneral, and the State of Montana; for all acts and omissions occured as an employee of that office and the State of Montana. This includes all electronic communications using the mt.gov email address, and all letters sent through that system to other entities and individuals as members of the government of the State of Montana. Mr. Moody is also bound by the Laws and Rules of the State of Montana. Mr. Moody is also bound by the civil and criminal laws of the United States, as ratified by the Congress of the United States. Mr. Moody, as a member of Defendant Knudsen's 'Elective Franchise', must also abide by the Montana Rules of Professional Conduct, and cannot be excused from obeying these Rules and Laws as reatified by the Montana Governor and Legislature.

15) The Montana Department of Corrections [DOC hereafter], is a government entity of the State of Montana, and is also a named defendent, as allowed by the above Congressional Laws. The MT.D.O.C. is responsible for the care and housing of all inmates who have been adjudged to criminal punishment for crimes committed within the jurisdiction of the State of Montana. This defendent is responsible for all acts and omissions by the prisons in which are under the control of persons to be punished for criminal acts, as ordered by a State of Montana Court. Safety to an incarcerated person is considered to be of the utmost importance. The MT.D.O.C. is responsible for all acts within the State and Privately owned prisons in Montana. This includes the Montana State Prison in Deer Lodge, Montana and Crossroads Correctional Center, [CCC, hereafter], in Shelby Montana; owned by CoreCivic of Tennessee. The Montana D.O.C. is responsible for appointment of the Warden at Montana State Prison, as currently held by Defendant Jim Salmonsen. [The cited Congressional Laws above are applicable here, and deny 11th Amend. Immunity.]

16) The Montana State Prison, as a defendent, is controlled by the Montana Department of Corrections, under director Brian Gootkin at this time, who was appointed by the Montana Governor (R) Greg Gianforte. Both men, may be named defendents as applicably shown by evidence. The MT.D.O.C. is headquartered in Helena, Montana as is Mr. Gootkin and Mr. Gianforte's offices, as controlling government officials.

17) Defendant Jim Salmonsen, is the present Warden at the Montana State Prison, [MSP], and was appointed by the Montana Department of Corrections, and under the direct supervision of the present director, Brian Gootkin. Mr. Salmonsen, is directly responsible for the safety and well being of each inmate at the Montana State Prison, while in his custody. Mr. Salmonsen, as Warden of the Montana State Prison is responsible for the acts and omissions of all personel and staff employed at Montana State Prison; and the administration of the institution as a public entity. Mr. Salmonsen was issued a State email address, in which to send and receive official State of Montana business and Communications, which includes communications from other State of Montana government entities, and individuals employed at these State entities; both elected and appointed. Officials at MSP, receive instruction and directives, through Mr. Salmonsen, including guards and non-security staff, in matters of importance from the hierarchy in the State of Montana's government. This includes all of the defendents named at this point. Warden Salmonsen and Montana State Prison, are located in Deer Lodge, Montana.

18) Defendant Susan Molendyke is a Sergeant at Montana State Prison, and is primarily assigned to maintain the safety and security in D unit of the Montana state Prison. Ms. Molendyke, while employed, has used, multiple other names, as follows: Susan Shea, Susan Brooks, Susan Hockings, and most recently Susan Molendyke. Ms. Molendyke is a self admitted felon, as also confirmed by D unit Lt. Brown; She was convicted of Forgery, and admitted my Ms. Molendyke previously. In the past Ms. Molendyke was a Mental Health instructor, and the record will show that she was then dismissed due to P.R.E.A. charges [Prison Rape Elimination ACT], per her employment records and grievances by inmates. The facts will show her involvement with the following defendent, and inmate Marco Guzman.

19) Defendant Steve Elliott, formerly a Sergeant at Montana State Prison. Mr. Elliott and Ms. Molendyke were associated in D unit at the same time, and the record will show they filed fraudulant documents, and also that Mr. Elliott was fired from employment due to criminal acts in the prison, including sales of drugs to both inmates and Staff. The Plaintiff is unsure of his residence, now that he has been fired. The State of Montana will have that information, and the record on their criminal activity, which also includes Mr. Elliotts wife, per the Media.

20) Defendent Larry Pasha, is a Sergeant at Montana State Prison, as an employee
    of the State of Montana, like defendents Molendyke and Elliott. Mr. Pasha has
    been a defendent in many criminal investigations, where he has either struck
    inmates or touched inmates in a sexual manner, with multiple P.R.E.A. charges
    having occurred, including to other staff members, as court records will show.
    The Plaintiff filed for a Temporary Restraining order against Mr. Pasha, in the
    Powell County Montana Third Judicial District Court, with documented eye witness
    statements from multiple inmates. Each of these inmates signed statements before
    the Court, and the Powell County Attorney turned the matter over to the Montana
    Attorney Generals Office. Two of the Seven eyewitnesses recanted their statements
    to the State Court, after defendent Molendyke, Elliott and Pasha retaliated
    against witnesses, and threatened others. These witnesses saw Sgt. Pasha repeatedly
    strick the Plaintiff in the chest, because the Plaintiff could not hear the
    instructions given by Pasha, with Pasha knowing previously that the Plaintiff is
    legally deaf, and must wear hearing aids in order to hear part of the sounds
    in the Plaintiffs surroundings. Pasha did also then threaten many of the witnesses
    who saw his assault on the Plaintiff, with all knowing of his reputation to
    inflict bodily harm, as is a matter of Court Record also.

21) Defendent Wesley Smoogy, is an attorney for the Montana Department of Corrections,
    and did knowingly lie to the Montana District Court Judge [Dayton], concerning
    the matter of Pasha's assault upon the Plaintiff. Mr. Smoogy's false statements
    include that it is 'Undisputed Fact' that the state of Montana did legally waive
    that the Plaintiff is wrongfully convicted. It is conceded by both Yellowstone
    County Deputy Prosecutor Julie Mees and the prior office of the Montana Attorney
    General, when that office was held by democrat Timothy Fox, and in which Mr. Fox's
    Sr. Deputy Attorney General, did knowingly concede and waive the facts and claims
    presented by the Plaintiff in Post Conviction as being true. The Montana Rules
    of Civil Procedure 12(b) & (h); and the Montana Rules of Appellate Procedure
    12(2), govern the states lack of arguement. Article III, of the U.S. Constitution
    is then applicable, where NO 'Case' or 'Controversy' exists, and thus the State
    of Montana has No lawful right to detain the Plaintiff by Law. [See attached
    Standard of Review concerning the States waiver, and U.S. Supreme Court controlling
    caselaw.].

22) CoreCivic, Inc., as a defendent is a private corporation, located in Tennessee,
    and owns and operates the private prison in Shelby, Montana. This private prison
    is named Crossroads Correctional Center [CCC]. CoreCivic employs their own warden
    and staff, to obey the Laws and Rules of the State of Montana, as well as the
    Laws and Rules set down by Congress.

23) Crossroads Correctional Center [CCC] is owned and operated by CoreCivic of Tennessee, as a private prison entity of that corporation. CoreCivic has contracted with the State of Montana, through the Montana Department of Corrections to house certain inmates, instead of at Montana State Prison, where all inmates are first housed, either from 'Intake' or from general population. CCC is obligated to provide phones and other services in accordance with Federal American's with Disabilities Act laws and rules. In this instance, to provide working TTY devices that are up to date, and allow deaf or hearing impaired inmates to make phone calls to attorney's or the Courts. Refusal to provide these TTY devices, constitutes a violation of an inmates First Amendment Rights. Neither CCC, nor MSP provided the Plaintiff with a TTY device, and the Montana ADA supervisor has confirmed that CCC can not replace the hearing aids taken by defendent MSP and Molendyke, and destroyed at the Directive from the Montana Attorney General (R) Austin Knudsens office and Elective Franchise. [An email and letter from Mr. Knudsens 'Elective Franchise' is of Court evidence, which directs defendent Salmonsen to destroy all of the Plaintiff's evidence, and "ensure" that the Plaintiff can not file another "criminal, civil, or administrative case". The email's attached letter also threatens the Plaintiff's life on page 1. This email and letter to defendent MSP Warden Salmonsen, from defendent Montana assistant Attorney General Moody, was provided to the Plaintiff upon request, from CCC Chief of Housing Ms. Michelle Steyh. Ms. Steyh had been a unit manager and Mental Health Supervisor at MSP previously, and stated she "refused to Participate" in this type of 'corruption' to a USDOJ PREA agent during a USDOJ interview with the Plaintiff]. CCC's Inmate Account Clerk, Ms. Wahn, took $400.50 from the Plaintiff for "copies", shortly before purchasing a out of date 2009 TTY device, of the same amount, per a CCC case manager.

24) Ms. Wahn, the CCC Inmate Accounts Clerk, as s defendent is employed by CCC and CoreCivic, in Shelby, Montana. Ms. Wahn is responsible for purchasing items for CCC, and maintaining the proper balances in each inmates account after purchases.

25) The Plaintiff will name multiple John Doe defendents to this suit, upon receipt of further confirming documentation of wrongdoing by State and County officials.

26) The Plaintiff will name multiple Jane Doe defendents to this suit, upon receipt of further confirming documentation of wrongdoing by State and County officials.

27) Defendent, the County of Yellowstone, as a Municipal government entity of the State of Montana, was organized under the laws of the State of Montana, and receives both State and Federal funding.

IV. FACTS.

28) The Plaintiff will include the Constitutional, Statutory and Criminal violations committed against him by the defendents as a whole, beginning in 2007, where the State first violated the Petitioners American's with Disabilities Act Rights, during Montana District Court proceedings when the State was first made aware of the Plaintiff's hearing disability. The record of the States acknowledgement will be presented at trial, as well as conclusive evidence of the following.

29) The Plaintiff will show cause for the State of Montana defendents to order the destruction of Federally protected evidence in the possession of the Plaintiff. This evidence was destroyed at MSP, by defendents Molendyke and Elliott, at the directive of the present (R) Montana Attorney General, Austin Knudsen's 'Elective Franchise'. The evidence conclusively demonstrated the criminal acts by the State of Montana, and Yellowstone County, and conclusively proves that the Plaintiff is wrongfully convicted of criminal acts, as waived previously by the prior Montana Attorney General, democrat (D) Timothy Fox, representing the State of Montana, and under the Montana Rules of Professional Conduct [For Attorneys], that the State as represented by Julie Mees of the Yellowstone County Attorney's office, did knowingly concede and waive that the Plaintiff was wrongfully convicted after being acquitted at trial, under the Plaintiff's Fifth Amendment Double Jeopardy Rights. Under the Montana Rules of Civil Procedure, Rules 12(b) and 12(h), the State of Montana, has through Ms. Mees, waived that the Plaintiff is wrongfully convicted, where Ms. Mees refused to dispute or argue the Plaintiff's Claim #7, of Collateral Estoppel, Double Jeopardy, Fifth Amendment violations, in relation to Montana Double Jeopardy Statutes, MCA: §46-11-503, Prosecution based on same transaction barred by former prosecution.[§(a) the former prosecution resulted in acquittal.]; and §46-11-410, Multiple Charges.§(2)(a),(b),(c), (d) and (e). This waiver occurred in the Plaintiffs Post Conviction Proceedings in the Montana 13th Judicial District Court, in Cause No: DV-18-1629, Ellison v State. Under MT.R.Prof.Cond. Rule 3.8 "Remedy" must occur.

30) NOTE: This §1983 is NOT meant to overturn criminal convictions. It is meant to show the criminality of State officials, who refuse to abide by State Laws and Rules; and who have weaponized the State of Montana's Judicial system in order to hide this criminality from the Public, both State and Nationally.
The Plaintiff wishes to expose this criminality to the public record, and request that these named public officials obey the Laws and Rules on the United States, and in which 42 USC §1983, Civil action for deprivation of Rights."...shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity,..."
Ordering criminal activity does not fall under judicial capacity.

NOTE: Continued."...injunctive relief shall not be granted unless a declaratory
decree was violated or declaratory relief was unavailable."

31) The Plaintiff will present a Writ of Habeas Corpus ad Testificamdum [DECREE] by the
court in the related CV 18-056-BLG-BMM-JTJ, Ellison v Yellowstone County, et al.,
§1983 proceedings. The Plaintiff will present evidence that the presiding jurist
in that matter, U.S. District Court Judge Brian Morris, has shown his prejudicial
bias against the Plaintiff, by refusing to allow the Plaintiff to hold the present
defendents accountable for their criminal offenses, as cited herein.
The Plaintiff will move that this federal jurist recuse himself as demanded by law,
as he is not allowed to adjudicate facts and evidence of his own bias and prejudice.

32) The Plaintiff will also present documentation that the present Montana Attorney
General in a seperate case excused another U.S. District Court Judge, Dana Christensen,
for submitting perjurous statements to the Appellate Commissioner for the US Court
of Appeals for the Ninth Circuit. This disqualifies Judge Christensen.
The Plaintiff will move for recusal by this jurist also if appointed by this Clerk.
The Plaintiff will move for a change in venue to a seperate US District Court, outside
of Montana, due to the present Montana Attorney General, Mr. Knudsen, stating that
the criminal errors by Judge Christensen be excused, acting more as counsel for
Judge Christensen, than as counsel for the State of Montana. A fair trial is asked.

33) The Plaintiff will present further evidence waived by the prior (D) Montana Attorney
Generals Office, under (D) Timothy Fox, and his Sr. Deputy C. Mark Fowler, who did
also waive issues of constitutional violations. Mr. Fowler, in the Appeal of the
Plaintiff's Petition for Post-conviction relief of DV-18-1629, as appealled under
and opined by the Montana Supreme Court in 2020 MT 324N, Ellison v State; did knowingly
waive and concede the New Scientific DNA evidence and jurisprudence which established
the Plaintiffs Actual Innocence, [The State claimed Plaintiff DNA found at his
own home constituted a crime]; Mr. Fowler, did concede that the State, as represented
by Yellowstone County, committed three (3) seperate issues of Malicious Prosecutorial
Misconduct, including lack of probable cause, and 'Fraud on the Court' through
perjury by that County Attorney's Office, for Yellowstone County, and unlawful
attack upon eye-witnesses before the Court. The Plaintiff will call Ms. Mees as a
witness. The other County Prosecutor, Brent Linneweber will be called also and
he will explain his role in excusing a Yellowstone County Detective, Frank Fritz,
from criminal charges, where, with the Plaintiffs ex-wife, Rhonda Mae Quarters,
hired 2 Cartel men to Abduct, Torture, Rape and 'Dump' the Plaintiff from a cliff
on Federal Interstate [I-90] property. Carlos Molina, one of the Cartel men was a
member of the MS13/ Sinaloa Cartel of Texas and Arizona. Molina admitted to MSP
authorities that he had been paid "50K",[$50,000.00] by Fritz and Quarters.

34) The evidence of the Plaintiff being Abducted, Tortured, Raped and 'Dumped' off a
Park County Bridge on I-90, is conclusively documented with photos, video, and
multiple State Investigations, and was contained in two plastic 'Totes' in the
Plaintiff's possession. The evidence also included the Motive for Detective Fritz
and Rhonda Quarters [fmrly Ellison] to pay the Cartel men to commit this criminal
action, which was that a 'Bounty' was offered by an Oregon Company, upon the Plaintiff
and his Father, Claude L. Ellison. The 'Bounty' was offered to halt a $30,000,000.00
civil suit against that company, who the Ellison's caught in 'Bond Fraud'. To obtain
the Ellison family's $1,786,000 bond on a construction project, and then use a much
cheaper company who used illegal mexican labor. These mexican workers made it known
that they were MS13 workers for the Cartel. Later the Plaintiff learned that the
Cartel man, Carlos Molina, who admitted to Torturing and Raping the Plaintiff, was
also MS13/Sinaloa, and worked for 'El Chapo' Guzman. Molina hired Jacobsen of the
Montana Nortanio gang to abduct, torture, and rape the Plaintiff. These facts are
previously waived as true, without argument from Mr. Fowler in his response brief
in 2020 MT 324N, Ellison v State(MT.S.Ct.2020). The 'Bounty' was originally offered
to two known Seattle Organized crime members, Justin and Aron Stevens, who refused
the $10,000.00 offer to 'terrorize' the Ellison's into dropping the suit. That suit
will be presented as evidence, and is already before this court, as is all of the
other documentation that the present (R) Montana Attorney General's Office ordered
destroyed, in his emailed directive to defendent Salmonsen.

35) The above is the portion that (R) MT. ATTY.GEN. Austin Knudsen, through his assistant
Patrick Moody, ordered defendent MSP Warden Salmonsen to destroy. Salmonsen's staff
Sgt. Molendyke and Sgt. Elliott, and inmate Marco Guzman [Nephew to El Chapo, he says],
already confiscated all of the Plaintiffs evidence of the above criminal acts by
the State. The Plaintiff will present statements from multiple witnesses that saw
Molendyke, Elliott, Guzman and another inmate spread this evidence out on a table
in D unit at MSP. The defendents did then place this evidence in bags, and Guzman
took these bags out the door and into a '4 wheeler/ Gator' vehicle. This occurred
at the end of March 2023.

36) Defendent Molendyke had also received from the Plaintiff Ellison, a package for
mailing to the United States Supreme Court. The prison internal mailing system
begins when an inmate presents documents as 'Legal Mail' to the unit staff where
the inmate is housed. MSP took possession of the Plaintiffs Petition for Writ of
Certiorari, to the Supreme Court at that time, for mailing into the United States
Postal Service, and for delivery in Washington, DC. There is NO MSP record that
this package was taken to the MSP mailroom. The Supreme Court did not receive
this 40 page Petition. The Petition had previously been emailed to the Montana

Attorney General at his official mt.gov email by the Plaintiff's Power of Attorney
using the Plaintiff's email 'legalprocessreform@gmail.com'. The document was also
emailed to MSP mental health therapist Cassie Hindman. This Petition and its
evidence documented the criminal acts by the State and that the prior (D) Montana
Attorney Generals Office under Mr. Fox had legally conceded and waived the Plaintiffs
Actual Innocence New Evidence, and 3 Malicious Prosecutor Misconduct claims. Which
per the Montana Rules of Appellate Procedure, Rule 12(2), the State is NOT "dissatisfied"
with the claims made by the Plaintiff Ellison in the Appeal 2020 MT 324N(MT.S.Ct. 2020).
Also in the Petition for Post-Conviction being appealed DV-18-1629, Ellison v State
in the MT.13th.Jud.Dist.Ct., Yellowstone County agreed that the Plaintiff was
wrongfully convicted under the Double Jeopardy Clause Rights after acquittal, where
Ms. Julie Mees knowingly abandoned that claim, and thus under the Montana Rules
of Civil Procedure, 12(b) & (h), the State waived that claim. These waivers by the
State constitute that the Plaintiff is wrongfully convicted and illegally sentenced,
which the State legally concedes. Thus this is grounds for the Plaintiffs attached
Motion for Injunctive Relief, to order the State of Montana to abide by the laws,
rules and standards set forth by the Montana Legislature, as ratified by the office
of the Montana Governor, and "REMEDY" the Plaintiff's current wrongful conviction.

37) The Plaintiff's Petition for Certiorari was legally filed with the United States
Supreme Court upon it being placed in defendents custody. See Rule 29.2 of the
Rules of the Supreme Court. Also under Rule 36.2 of the U.S.S.Ct.R.'s the Plaintiff
was illegally transferred to Crossroads Correctional Center, in Shelby, from the
custody of Warden Salmonsen, to the custody of CCC Warden Peter Bludworth, also a
defendent herein. These are violations of Plaintiffs First Amendment Rights, to
censor, the Certiorari; and a violation of the Fifth Amendments Right to the
Due Process of Law, to transfer the Plaintiff to a gang prison, privately owned
by CoreCivic, which is CCC. If not for the honorable efforts by CCC Chief of Housing
Ms. Michelle Steyh, who from the first day ordered 24 hour protection of the Plaintiff,
and confirmed all of the evidence and facts as true to a USDOJ/ PREA agent called
to the private prison. This USDOJ agent advised that the Plaintiff mail a USDOJ
ADA complaint to Washington, DC. The Plaintiff had repeatedly tried to due that,
to no avail since. The CCC mailroom did NOT mail that document, and the Plaintiff
was given a copy of his 'Legal Mail' Log from CCC, which confirms that this complaint
and ones to the Montana Human Rights entity at the Montana Department of Labor,
did not get mailed. Each a violation of the Plaintiff's First Amendment Rights.

38) It was while the Plaintiff was transfered illegally to CCC, that Ms. Steyh, placed
the Plaintiff in a SHU Housing unit known as S-Dorm, and Ms. Steyh ordered that the
Plaintiff wear a orange vest at all times, with the 24 hour security. The Plaintiff

was told to sit at a certain seat in the chow hall when eating, by the guards door, where 2-4 guards stood watching the chow hall. The Plaintiff was told not to go into any of two 'Wings' used to house the gang members at CCC, which included the 'Sinaloa'/ Southsiders/ MS13 and the 'Nortanio' gang members in the other wing. The Plaintiff presented his evidence and the email and letter from (R) MT.Atty.Gen. Knudsen and Moody, and a copy was given to the MT.D.O.C. monitor at CCC, Ms. Combs, and emailed to Ms. Billie Reich at D.O.C. headquarters in Helena. Ms, Reich had also previously worked at MSP, like Ms. Steyh; and had in fact confirmed that the Cartel man Carlos Molina had Tortured and Raped the Plaintiff, by his own admission. The Plaintiff was allowed to receive a large box from his Power of Attorney, which contained copies of part of the evidence take by MSP Molendyke, Elliott, and Warden Salmonsen. While at CCC, the Plaintiff had to file a Petition for Habeas Corpus to the Supreme Court, due to time limitations. The U.S. Supreme Court Rules state that only 'rarely' will that court review a Habeas Petition. The Plaintiff kept a copy of that Petition and the evidence, which was approximately 1760 pages.

39) While at CCC, the Plaintiff wrote grievances to that private prison about the lack of a working TTY telephone, and grieved the fact that MSP had confiscated the hearing aids worn by the Plaintiff, and had destroyed them, per the directive of the Montana Attorney Generals Office, held by (R) Austin Knudsen, and written on his State letterhead, by his assistant Patrick Moody. The Plaintiff also stated that the first page of that letter was a threat on the Plaintiff's life, as also confirmed by Ms. Steyh to the USDOJ agent, as an unofficial "Death Order".

40) CCC Warden Peter Bludworth met with the Plaintiff, with Ms. Combs of the MT.D.O.C., in S-dorm, and the Plaintiff expalined the situation to the Warden, and Ms. Combs confirmed to him that their was a 'Bounty' placed on the Plaintiff, and that the 'Sinaloa' gang members in his private prison had made repeated attempts at getting to the Plaintiff in the halls, the gym, library and that the Plaintiff was under 24 hour protection, wearing the orange vest. Mr. Bludworth stated "Salmonsen sent you up to be killed on my watch." 2 weeks later the Plaintiff was again transfered illegally, back to MSP, and into D unit with Ms. Molendyke. During the transfer, staff at CCC confiscated the whole of the Plaintiff's 'working copy' of the Petition for Certiorari, re-submitted to the US Supreme Court. Again violating Rules 29.2 and 36.1 of the U.S.S.Ct. Rules. The Plaintiff has MSP confirming evidence that this documentation was taken from his protected 'Totes'.

41) Recently the Supreme Court mailed back this evidence and documentation, to the Petitioner/ Plaintiff Ellison. MSP presented a portion of that filing, without the envelope, and D-unit Sgt. Shine and Sgt. Spoon gave the remaining documents to the Plaintiff, after receiving them from the MSP mailroom, in that condition. This is a Tampering with Evidence and mail criminal act.

42) DOCUMENTED RETALITORY ACTS BY THE DEFENDENTS AND OTHER GOVERNMENT EMPLOYEES:
   Note: The following enumerated acts are documented, and many confirmed by the
      MSP/DOC staff. The incidents are in order of the most painful.
   a) Montana State Prison Doctor T. Kohut, knowingly "Crushed" the Plaintiff's
      Left testicle, by "estrangulation", because the Plaintiff was "that troublemaker".
      The Montana Department of Corrections Clinical Administrator, Ms. Connie Winner,
      did confirm that Dr. Kohut did this to the Plaintiff, in a grievance, to the
      Director of the D.O.C.. Kohut was fired. The Plaintiff filed a civil complaint
      into the Montana 3rd Judicial District Court, with summons and praecipe's. That
      court refused to have these documents served by the Powell County Sheriff, and
      the Clerk dismissed this. The Plaintiff notified the District Court Judge
      Ray Dayton, who only found this to be "concerning", and refused to act. The
      Plaintiff has presented this letter to the U.S. District Court, without that
      courts action. MSP Mail logs, and written statements from MSP guards will
      confirm this. Many who reported this to the defendant Warden Salmonsen were
      fired. Sgt. Olhausen was fired after reporting that 18 packages of 'Legal Mail'
      were destroyed by MSP, as mailed to attorney's. Also many to the US Judicial
      Ethics Committee, to US Senators, and other State and Federal officials were
      cencored. Four to the Governor of Montana were Never mailed. Each containing
      this documentation that Dr. Kohut crushed my testicle, to silence and "chill"
      me. Documentation of the above will be presented to the jury.
   b) Montana State Prison placed a known and convicted sexual assault and rape inmate,
      Adam Heitkemper, in the Plaintiff's cell, with the knowledge that Heitkemper
      had previously assaulted other inmates repeatedly. The Plaintiff caught this
      man masterbating multiple times and complained to staff, to no avail. One
      morning Heitkemper [on the top bunk of the cell] began masterbating with the
      Plaintiff on the lower bunk. The Plaintiff, very angrily yelled at him to stop,
      and started to stand up. Heitkemper was prepared, and with both feet, kicked
      the Plaintiff in the face, and knocked the Plainyiff unconscious...Fracturing
      the Plaintiff's skull in the orbittal lobe on the left side of the Plaintiffs
      face. When the Plaintiff awakened, Heitkemper and 2 other sexual offender friends
      of Heitkemper threatened the Plaintiff, to not report the assault. A guard
      saw the Plaintiff's swollen and bruised face 1 day later, and had the Plaintiff
      go to the guards "cage/ office" in C unit [C unit is the workers unit]. The
      Plaintiff told the Sergeant on duty that Heitkemper said it was "an accident".
      The Plaintiff was taken to the MSP medical infirmary and met with Lt. Franks,
      [now Capt. Franks] and told the Lt. what happened and the threats. Lt. Franks
      took many photos, and sent the Plaintiff back to C unit. Heitkemper was NEVER
      charged and was just moved to another cell.

b) Cont.

The Plaintiff was seen by the Montana State Prison Dentist Dr. Starr, and a oral surgeon from outside the prison, Dr. Simms. Dr. Starr took X-rays of the damage done, and confirmed that the Plaintiffs skull had been fractured. The fracture of the orbital lobe [left eye] to the left canine tooth, was confirmed by both. Dr. Starr gave the Plaintiff a printout of the X-Ray for Court purposes, and later a second copy. Dr Starr was released as a MSP dentist shortly after.

NOTE: In both §(a) and §(b), their have been incident reports of these assaults, which the MSP medical refuse to give copies of. A male nurse, Kyle Horn, who walks with a limb witnessed the Kohut assault, and Lt. Franks took the photos of the Heitkemper assault. MSP refuses to allow access to that evidence.

c) The Plaintiff was kicked down a set of stairs by Sgt. Graham, which knocked out and broke 2 molars on the upper left side of Plaintiff's Face.

d) A large Nortanio inmate Jose Martinez [A New Mexico transfer] grabbed the Plaintiff from behind and threw the Planitiff onto a set of stairs. This damaged the Plaintiffs knees again, causing the Plaintiff to wear knee braces, and caused a severe hernia on the left side, by his testicles. The Plaintiff was told to remove those braces by Sgt. Graham, went the Plaintiff was kicked down the stairs in §(c) above. The Plaintiff was operated on for the hernia, but the doctors placed the mesh on the right side of his testicles, not the left where that testicle kept protruding. After the operation is when the Plaintiffs testicles swoll up, and Kohut crushed the left testicle. [Medical sonogram records are available at St. Patricks Hospital, Butte, Montana will confirm the 'Crushed' Testicle.].

e) MSP Sgt, Larry Pasha, while in D unit struck the Plaintiff in the chest multiple times in front of many D unit inmates. 7 inmates in D unit wrote statements as to what occurred. Ms. Molendyke threatened 2 of these inmates and they recanted. The other 5 have been retaliated against, as evidence will show.

NON PAINFUL RETALIATION AT MSP, MEANT TO SILENCE AND "CHILL" THE PLAINTIFF:

f) Unit staff have done 'Searchs' of my cell and poured coffee on my legal filings.

g) Unit Staff have falsely written me up for disiplinary, that I was found NOT GUILTY in order to confiscate my evidence against the State and MSP. The originals of which are kept outside of Montana, on most of the evidence, has been mailed to me at MSP and CCC, as the record wll show.

h) Unit Sgt. Graham, illegally confiscated all of my 15 legal books that had been mailed into me with permission from the previous MSP Warden Fletcher. Graham was in the process of destroying these legal books when Fletcher was notified. Fletcher stopped Graham, and MSP replaced the destroyed books.[15 allowed in MSP].

i) MSP Has not allowed the Plaintiff to order commissary items since September
of 2023. Commissary is needed by all inmates, to order soap, shampoo, and other
hygiene items; clothing; typing paper; typing ribbon or anything. Every order
that the Plaintiff presented to MSP Canteen was denied, and replaced with one
one item....6 bottles of water, costing $1.14. The Plaintiff has all of those
receipts and records of this. Other inmates have not been denied these needed
items. [Equal Protection violation, and Deliberate Indifference proven.].

j) The Plaintiff will present more evidence in the form of MSP and CCC Grievances
which comply with the 'prison exhaustion' rules. Mostly demonstrating the
continuing First Amendment violations by the defendents, to censor the Plaintiffs
Freedom of Speech, Right to Redress, and prohibition of Retaliation.
These acts together combine to demonstrate the Defendents 'Fraud upon the Court',
and Conspiracy to commit criminal acts in order to silence and 'Chill' the
Plaintiff.

NOTE: There are more less serious civil rights violations which will be also
      presented at trial. Including the 'Undisputed Fact' that Yellowstone
      County Guards, place a know enemy into the Plaintiffs cell at the County
      Jail, and the guards knew of the danger. The man, Steve Aalgard, stabbed
      and cut the Plaintiff 3 times before the Plaintiff was stopped. Aalgard
      had been a former employee of the Plaintiff and the Plaintiff's father
      Claude L. Ellison, working for Ellison, Inc. and Wallpro, Inc.. Aalgard
      had been fired for theft and drinking at work. Aalgard was a former boy
      friend of a know gang family daughter. the Nava's are well known in Billings,
      and have a record of violence. Mr. Aalgard is now deceased per a meeting
      with Yellowstone County Attorney, Melissa Williams at CCC, in Shelby.
      That whole meeting was in writting between Ms. Williams and the Plaintiff,
      due to the Plaintiff's hearing loss. Ms. Williams at that meeting confirmed
      that CCC did NOT have a working TTY telephone. [CCC later purchased a
      out of date TTY phone made in 2009, Portaview 20 Jp, TTY/TDD K-PV20 JP.].
      CCC casemanager, Mr. Newcomb, tried to use it to call the National Assoc.
      of the Deaf, in Silver Spring, MD; with the Plaintiff present. The official
      at the NAoD confirmed that this TTY was so out of date that NO ONE had it
      at any government agency or ADA lawfirm. This conversation was recorded
      by the NAoD by request. The Plaintiff has also learned that the Cartel
      man Carlos Molina was also killed by the Cartel, for 'Ratting' on the
      Sinaloa Cartel. This was confirmed by MSP, and Marco Guzman, and now also
      Ms. Williams at the Shelby meeting, where she confirmed that the Montana
      Attorney General was in Default. For the sum certain amount of $135,000,000.

## V. LEGAL CLAIMS

43) The Plaintiff re-alleges and incorporates by reference the previous numbered points and paragraphs, 1 - 42.

44) The Plaintiff incorporates the relevant Post Conviction briefs, State reponses, and replys, as presented to the Montana Thirteenth Judicial District Court, in Yellowstone County, Montana, Cause No: DV-18-1629, as as attached herein, within Appendix A. [Evidence that the State abandoned, conceded to and waived Claim #7].

45) The Plaintiff incorporates the appeal to the Montana Supreme Court, of the above Post Conviction, by presenting the Opening Brief, the State's response, and the Reply. [Evidence that the (D) Timothy Fox, through Sr. Deputy Fowler did also abandon, concede and waive the New Forensic [DNA] evidence, and also (3) three seperate Malicious Prosecutor Misconduct issues as claimed.].

46) The Plaintiff will also incorporate the whole of cause CV 18-056-BLG-BMM-JTJ, Ellison v Yellowstone County, et al; as relevant evidence which was illegally confiscated by defendents at the directive of the current (R) Montana Attorney Generals Office and destroyed at his order. This includes all references to the criminal acts as documented, and committed by the State defendents, and other to be named State and County actors, which the Plaintiff will request that the Court order to be arrested, as required under Law.

47) The Plaintiff will present grievance and communication by the Plaintiff to the grievance officials of both CCC and MSP, documenting the ADA violation, and the deliberate indifference to the Health and Safety of the Plaintiff, as a cummulative effort to harm the Plaintiff, from 2007 until the present, and attempting to silence and 'Chill' the Plaintiff.

48) The Plaintiff will present a Motion for Immediate Injunctive Relief, directed to the State of Montana, and the (R) Montana Attorney Generals Office, to obey the Laws and Rules of Montana; and the Laws and Rules of the United States. The Relief requested will be that the present (R) Austin Knudsen, honor the prior (D) Timothy Fox's waivers, and per the Montana Rules of Professional Conduct, under Rule 3.8, Special Responsibilities of a Prosecutor, "The prosecutor in a criminal case shall:
(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." [The (D) MT.A.G. waived that the State lacked probable cause.]
(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and in connection with sentencing,.."[State waived Double Jeopardy 5th Amendment claims, after acquittal, which makes sentence illegal.].

48) Cont.

Also Rule 3.4 of the Montana Rules of Professional Conduct, applies to the Montana
Attorney Generals Office, and to the Yellowstone County Attorneys Office, that:
Rule 3.4 Fairness to the Opposing Party and Counsel, applies:

"A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence, unlawfully alter,
destroy or conceal a document or other material having potential evidentiary
value, or counsel or assist another person to do any such act.

(b) falsify evidence, counsel or assist a witness to testify falsely, or...

(e) In trial, allude to any matter that the lawyer does not reasonably believe
is relevant or that will not be supported by admissible evidence, assert
personal knowledge of facts in issue except when testifying as a witness,
or state a personal opinion as to the justness of a cause, the
credibility of a witness, the culpability of a civil litigant or the guilt
or innocence of an accused, or..."

The Plaintiff will show that the State of Montana, as represented by Yellowstone
County prosecutors Julie Mees and Brent Linneweber [the former Park County Attorney,
who was fired/quit after it was found out that he had hidden and suppressed a deputy
dashcam video, documenting a Park County deputy saving the Plaintiff, after being
'Dumped' by the Cartel men Molina and Jacobsen, at the order of Detectiver Frank
Fritz. That Mr. Linneweber lied to the court, and made claims as if he was a witness,
and did suppress all of the 'evidence', which the present defendents destroyed at
the directive of the two defendents Knudsen and Moody, in the email and letter.

49) The Plaintiff may possibly meet with Ms. Williams again per her recent request.
The Plaintiff, will request that Ms. Williams not oppose a stay of proceedings
in the §1983 case, Cv 18-056-BLG-BMM-JTJ, Ellison v Yellowstone County, et al.,
which will be incorporated herein by the record. This is the '056' case in which
Sgt. Molendyke, Sgt. Elliott, and Inmate Marco Guzman confiscated and bagged up
into a MSP small 'Gator' vehicle. Ms. Williams will be asked not to oppose the
Plaintiff's request for Change of Venue, and to a Mediation involving only her
and for Yellowstone County. The Plaintiff will ask that this present matter by
properly moved to the Federal Claims Court in Washington, DC. The Plaintiff will
file a 'Request for Admissions' directly to Ms. Williams, concerning this matter
in whole and the above responsiblity of Yellowstone County and it's Office of
County Attorney, to Admit to the above obligations in MT.R.Prof.Cond. 3.4 and 3.8,
as demanding 'Relief' from Judgement to be presented to the Montana 13th Judicial
District Court, based upon the ADA vioaltions since 2007.

50) CONTROLLING CONSTITUTIONAL RIGHTS VIOLATED:

As applicable to this matter, the following Rights, as guaranteed by the United States Constitution have been violated:[See Bill of Rights, March 4,1789].

ARTICLE III, SECTION 2. "The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States...to controversies to which the United States shall be a party;..."

Here were the prior (D) Montana Attorney Generals Office, and the Yellowstone County Attorney's Office, through their representatives, C. Mark Fowler and Julie Mees, respectfully, both waived Constitutional violation Claims in the Plainitiff's Post Conviction Proceedings in the State Court; there is NO CASE, NOR CONTROVERSY. See Standard of Review, as follows, in Section VI of this Complaint.

Thusly, this complaint is partially to bring to the court, a civil order to obey the Laws and Rules of Montana, and the Montana Rules of Professional Conduct; in order that the court now grant injunctive relief, and order the present (R) Montana Attorney General and the Yellowstobe County Prosecutors Office, to obey the law and move that the underlying charges be dismissed, due to the ADA laws as applicable, with this lack of "case" or "controversy".

AMENDMENT I: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for redress of grievances."

Here the State of Montana, and its present counsel, (R) Austin Knudsen, as the State's present Montana Attorney General,as defendents, has criminally and civilly violated this Constitutional Right, prohibiting retaliation, and the right to exercise the right to access the courts. The defendents from MSP and the MT.A.G. have continuously "abridged" the Plaintiffs right to exercise free speech, to present legal grievances for the criminal and civil violations that are extablished here which constitute 'Fraud upon the Court', Perjury, wrongful conviction, and both physical and mental duress; by these State defendents as being "Deliberate Indifferent", to the Law, to the Plaintiff's rights, and to enjoy the physical and mental wellbeing guaranteed by the First Amendment

See *Standard or Review, as follows, in Section VI of this Complaint.

AMENDMENT IV: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, upon probable cause, supported by Oath or affirmation, and particularily describing the place to be searched, and the persons or things to be seized."

Here the prior (D) Montana Attorney General's Office conceded and waived that the

State of Montana, as represented by theYellowstone County Attorney's Mees and
Linneweber, lacked probable cause to charge, as shown in the Plaintiff's Malicious
Prosecutor Misconduct Claim in the Post Conviction Proceedings before the Montana
Supreme Court, in cause no: 2020 MT 324N, in the States response brief. The claimed
'probable cause' is waived as lacking, in that the State claimed that because the
Plaintiff's DNA was found on objects at his own home, that was 'probable cause'.
The lacking probable cause, of DNA at the Plaintiff's home, is the 'Tampering with
evidence' charge remaining, as one in the same. The Stated failed to dispute, and
abandoned any argument concerning the remaining charges after the Plaintiff was
acquitted at trial, and that Double Jeopardy prohibited the continued prosecution,
conviction or detention from lawful liberty.
This is some of the evidence that the present (R) Montana Attorney Generals Office
ordered destroyed by MSP defendents here.
See Section VI, as follows; concerning DNA jurisprudence, and Forensic Science
Findings as New Evidence.
AMENDMENT V: "No person shall be held to answer for a capital, or otherwise infamous
              crime, unless on a presentation or indictment of a Grand Jury, except
              in cases arising in the land or naval forces...nor shall any person
              be subject for the same offense to be twice put in jeopardy of life
              or limb; nor shall be compelled in any criminal case to be a witness
              against himself, nor be deprived of life, liberty, or property, without
              due process of law;..."
Here the defendents, (R) Montana Attorney Generals Office defendents Knudsen and
Moody; as well as the Yellowstone County Attorney's office; has known that Ms. Julie
Mees for the State and County did waive that the Plaintiff was wrongfully convicted
under the Double Jeopardy Clause, and Due Process Clause. See MT.R.Civ.P. 12(b),(h).
The Plaintiff asks that the court order injunctive relief, that the above defendents
obey the 'Rule of Law', and the Montana Rules of Professional Conduct, Rules 3.4
and 3.8, as ratified by the Montana State Legislature, and the Prior Montana State
Governor, as demanded by the People of Montana, that the Due Process be obeyed.
see Section VI, as follows concerning controlling Double Jeopardy prohibition.
AMENDMENT VI:  "In all criminal prosecutions, the accused shall enjoy the right to
               speedy and public trial, by an impartial jury of the State and
               district wherein the crime shall have been committed, which district
               shall have been previously ascertained by law, and...have compulsory
               process for obtaining witnesss in his favor, and to have the
               Assistance of Counsel for his defense."
Here the State of Montana provided counsel that was ineffective and provided NO
defense, where the State knew the Plaintiff was denied a counsel for a ADA hearing

impaired defendent, who could not object to any portion of the deceptive process
used against him...

AMENDMENT VIII: "Excessive bail shall not be required, nor excessive fines imposed,
                nor cruel and unusual punishments inflicted."

Here the Plaintiff will present the documented and continued "cruel and unusual
punishments inflicted" by the defendents. The cruelty of which can not be denied
and in which the defendents have knowingly and purposely censored, in order to
hide from the public, just how inmates are treated who defy the State of Montana,
and who exercise their constitutional rights. The directive from the (R) Montana
Attorney General Office, to MSP Warden Salmonsen, is clearly a criminal act, in
support of further criminal acts through MSP Warden Salmonsen, to his staff at
Montana State Prison. Done solely to hide the fact that the Plaintiff is beyond
doubt, a "POLITICAL PRISONER" in Montana. In the United States, were the Constitution
forbids this cruel treatment, as confirmed by the MT.DOC. Not even Russia treats
a: prisoner in this manner...crushing a mans' testicle to silence and 'chill', and
destroying his manhood and dignity. Civil Rights in America have never been so
violated, by criminal acts by government officials...who Abduct, Torture and Rape
Citizens...hiring known Cartel members to do this in order to extort a signature
onto a release form for a Oregon Company...who offered a 'Bounty' for the persons
who obtained the signature. That is why the Sinanola man Molina and Detective Fritz
used the Tazer on the Plaintiffs chest 3 times until the Plaintiff passed out. And
then transported the Plaintiff on Federal Commerce facilities [Interstate I-90],
and burning the Plaintiff repeatedly with a car cigarette lighter to see if the
Plaintiff was conscious...and then dumping the Plaintiff down a cliff from I-90
property when the Plaintiff could not respond and passed out again. The Plaintiff
was then rescued by a very honorable Park County deputy, and given a chance to
eat a small candy, to raise the Plaintiff's blood sugar, and ice chips to hydrate
the Plaintiff on the way to the Park County Hospital. Here at that Hospital the
doctors report shows the Rape. The Plaintiff's father was called in Billings, once
the Plaintiff could speak. Claude Ellison drove to Livingston and met with a detective
and then took the Plaintiff to the only Rape facility available in Billings. Here
the Rape specialist, took photos of what occurred, and documented the Rape. The
Cartel man Molina had inserted a glass 'dope pipe' in the Plaintiffs rectum twice.
Once cold...and once heated, breaking it off inside the Plaintiff. A recent MRI
by a urologist, in Great Falls Benefis hospital still shows the scarring.

   Also when then MSP Dr. Kohut crushed the Plaintiffs testicle, the Plaintiff
has been in constant pain, with the only relief offered by MSP being a pill of
Naproxin. Naproxin only dulls the pain, except if the Plaintiff moves or walks.
The Plaintiff now has prostrate cancer, which MSP refused to treat for 3± years.

AMENDMENT XIV: Passed by Congress June 13, 1866. Ratified July 9, 1868.
    Section 1: "All persons born or naturalized in the United States, and subject
                to the jurisdiction thereof, are citizens of United States and of
                the State wherein they reside. No State shall make or enforce any
                law which shall abridge the priveleges or immunities of citizens
                of the United States, nor shall any State deprive any person of
                life, liberty, or property, without the due process of law; nor
                deny to any person within its jurisdiction the equal protection
                of the laws."
Here the defendents have recently denied the Plaintiff his equal protection rights
and violated the Due Process of Law, by disregarding the Laws of Montana as written
to protect a Montana Citizen, from being "Twice" placed in jeopardy, after the
Plaintiff was acquitted at trial, in the cause no. DC-14-0614, which violates
Montana Codes Annotated [MCA]; §46-11-503 and §46-11-410, as presented to the
State of Montana Court system. The State of Montana has violated the 14th Amendment
in that it did "abridge the priveleges" and "immunities" as guaranteed by the
5th Amendment's Due Process Clause, and Double Jeopardy Clause, by admission,
concession and waiver by the prior (D) Montana Attorney General Administration
under Timothy Fox, and conceded by his Sr. Deputy C. Mark Fowler. A procedural
default and waiver that MUST be respected by the present (R) Montana Attorney
General administration, but in which has NOT been respected. Thus because of the
differences in Political Ideology, between the two elected officials and their
'Elective Franchises', The Plaintiff is literally a Political Prisoner, and that
the present (R) Montana Attorney General chose to order, the destruction of all
of the evidence waived by the prior (D) Montana Attorney General, and then place
the Plaintiff in a known dangerous and deadly situation in the privately owned
prison in Shelby, Montana, Crossroads Correctional Center [CCC], owned by defendent
CoreCivic, of Brentwood,Tennessee. Moved to CCC in order to invariably be assaulted
and killed by the Cartel gangs in CCC. CCC is where all of the most vicious Cartel
gang members are housed in the State of Montana prison system. And because the
Plaintiff is legally deaf, and can not use a normal phone to call anyone, and CCC
does not supply a working TTY phone, and Legal Mail is censored also; the same as
at Montana State Prison, there was little risk that the Plaintiff would ever leave
prison. On page 1 of the letter from Knudsens office to MSP WArden Salmonsen it
states: "Notably, Inmate Ellison has no realistic chance of ever leaving prison."
This was considered a unofficial 'death order' by CCC Ms. Steyh, as she confirmed
to the USDOJ/PREA Agent she had interview the Plaintiff at CCC, while keeping the
Plaintiff protected everyday in the SHU, [Security Housing Unit], known as S-dorm,
wearing a orange vest, and under 24 hour guard. Thank You and God Bless Ms. Steyh.

## VI. STANDARD OF REVIEW.

51) The following are relevant controlling authorities for this matter, both civilly
and criminally, concerning Rules of Procedure, Due Process, Double Jeopardy and Waiver.
Montana Rules of Civil Procedure, Rule 12(b) How to present Defenses.

"Every defense to a claim for relief in any pleading must be asserted in the
responsive pleading if one is required."

Same as the Federal Rules of Civil Procedure, Rule 12(b).

Here the 13th Judicial District Court Judge, Matthew Wald ordered the State of
Montana, as represented by the (D) Montana Attorney General and the Yellowstone
County Attorney's Office to respond to all of the Petitioners Claims, in Plaintiffs
Petition for Post Conviction Relief. Julie Mees of the Yellowstone County Attorney's
Office wrote the response for the State. The Plaintiff submitted 7 claims, with
multiple issues in each. Ms. Mees did NOT brief the Petitioner's Claim #7, which
was Collateral Estoppel; Double Jeopardy violation of the 5th Amendment, violation
of Article II, §17, Due Process of Law and §25, Self incrimination and double jeopardy
of the Declaration of Rights in the Montana Constitution. Mees WAIVED, Claim #7.
§25 states: "No person shall be compelled to testify against himself in a criminal
proceeding. No person shall be again put in jeopardy for the same
offense previously tried in any jurisdiction."

Here this Montana Constitutional Right was violated, as conceded to and waived by
the prior (D) Montana Attorney General Administration and in which demanded relief.
Rule 12(h) of the MT.R.Civ.P.: then becomes applicable:

Waiving and preserving Certain Defenses.

(1) When some are Waived."A party waives any defense listed in Rule 12(b)(2)(5)
by:(B) Failing to either:
(ii) include it in a responsive pleading..."

Thus by the Rules of Procedure here, Double Jeopardy violations by the State of
Montana and Yellowstone County were violated by concession and waiver by the
States abandonment and admission that the State violated this Right, as grounds
for relief as required under the Rules of Professional Conduct as cited herein,
Rule 3.4 and Rule 3.8..

See Brown v Davenport, 142 S.Ct. 1510, n.1, 212 L.Ed.2d 463(2022): citing
In re Nielson, 131 US 176,185, 9. S.Ct 672, 33 L.Ed 118(1889):

"A sentence violating the Double Jeopardy Clause was "beyond the jurisdiction
of the court", because an "express provision of the Constitution[] bounds and
limits all jurisdiction."

Under Article III of the U.S. Constitution there MUST be a 'case' or 'controversy'.
Where here there was not an adversarial conflict based upon the States waiver of
Plaintiff's Claim #7, Collateral Estoppel, Double Jeoaprdy. The Courts lost jurisdiction.

52) THE STATES WAIVER:

Thus, by the Rules of Procedure, the State of Montana, has legally waived that the Plaintiff has been wrongfully convicted under the Double Jeopardy Clauses and also under State Statute. The United States Supreme Court has established the controlling authority on a waiver [Procedural Default], and under the Party Presentation doctrine.

> "A court is not at liberty, we cautioned, to bypass, override, or excuse a state's deliberate waiver..." Opined by Justice Ginsburg in unanimous decision, Wood v Milyard, 556 US 463,466, 132 S.Ct. 1826, 182 L.Ed.2d 733(2012).

This Courts jurist Dana L. Christensen refused to obey this Supreme Court opinion, and the similar opinions from the Ninth Circuit, after the Plaintiff filed Judicial Misconduct Charges and Complaint to the Ninth Circuit, for deliberately lying to the Ninth Circuit Appellate Commissioner. This evidence was also taken and destroyed at the directive of the Montana Attorney General (R) Austin Knudsen's "Elective Franchise". This is grounds for the change of venue herein to be granted, with the Court allowing transfer to the Federal Claims Court, moving jurisdiction to that Court. Likewise the State of Montana's Courts have refused to recognize or apply these principles and 'Rule of Law' in Habeas proceedings. The Plaintiff must now bring this matter to the Court under a 42 USC §1983 proceeding, as is allowed and allowed per the United States Supreme Court.

> "Habeas is the exclusive remedy, we affirmed for the prisoner who seeks "immediate or speedier release from confinement"...Where the prisoner's claims would not necessarily spell speedier release. however, suit may be brought under §1983".

The Plaintiff partially brings forth this §1983, et seq, suit for the court to grant injuctive relief; where that order would demand that the present (R) Montana Attorney General honor the prior (D) Montana Attorney General's waiver, that CANNOT be bypasssed, overrode, or excused per the Wood decision above.

Also Justice Ginsburg opined the Supreme Court unanimous decision in United States v Sineneng-Smith, 140 S.Ct 1575, 206 L.Ed.2d 866,(2020), 590 US 371, at 371,

> "a drastic departure from the party presentation constitutes an abuse of discretion."

The State of Montana, in its District Court and Supreme Court, has ignored the Party Presentation doctrine here, as has this Court in both the incorportated Ellison v Yellowstone County, et al, §1983 suit, and in Habeas. Again grounds for granting change of venue, because at Sineneng-Smith, the Court holds:

> "In our adversarial system of adjudication, we follow the principle of party presentation. As this court stated in Greenlaw v United States, 554 US 237, 128 S.Ct 2559,171 L.Ed.2d 399(2008), "in both civil and criminal cases, in the first instance and appeal..., we rely on the parties to frame the issues for decision and assign to the courts the role of neutral arbiter of matters the parties present." Greenlaw at 243.

The Court expanded these principles as being the 'Rule of Law', by holding:

> "We believe that the necessary effect of the Congressional adoptation of
> Rule 12(b)(2) is to provide that a claim once waived pursuant to that Rule
> may not be resurrected."
> Francis v Henderson, 425 US 536, 539-40, 96 S.Ct 1708, 48 L.Ed.2d 149(1976);
> Davis v United States, 411 US 233,242, 93 S.Ct 1577(1973).

The applicable Treatise, is opined by John Henry Wigmore, as cited by the Court,
in A Treatise on the System of Evidence in trials of Common Law, 2311 at 3233-34
(1904); that "Once waived-always waived". Mr. Wigmore also opined that "the general
rule that a privelege once waived is lost.", Evidence at Trial §2192, p. 2965(1905).
Based upon the above controlling authorities, the State waiver was deliberate, as
the "waiver requires a voluntary and knowing decision, or else by compulsion."
The State of Montana's district court Judge Wald, ordered the State to respond to
all 7 of the Plaintiff's Claims of Constitutional violations. The State, through
Ms. Mees, refused to brief the Plaintiff's Claim #7, Double Jeopardy, as ordered
by "compulsion". This is the caselaw and pleadings which the present (R) Montana
directed the Warden at MSP, Jim Salmonsen to destroy, and in which his staff, did.
Namely defendents Sgt. Molendyke, Sgt. Elliott, and assisted by inmate Guzman.
Mr. Elliot was fired for selling drugs in the prison to inmates and staff, and
was charged as a felon. Sgt. Molendyke, is a self proclaimed felon. Marco Guzman
is also a felon, who has committed murder in Texas, and is a member of the Sinaloa
Cartel, under the direction of his uncle, "El Chapo" Guzman. How can MSP justify
continuing to employ a known felon? This question will be asked at trial.

53) The following are relevant and controlling authorities for this matter, both civilly
and criminally, concerning 'Fraud', 'Fraud upon the Court', and 'Conspiracy'.

> "Thus, anything that counts as "fraud" and done with wrongful intent is "actual
> fraud."
> Husky Int'l. Elec., Inc. v Ritz, 578 US 355,360, 136 S.Ct 1581(2016).

The defendents representing the State of Montana, as a whole, committed 'fraud'
through the email and letter from the defendents Knudsen and Moody, representing
the State of Montana, through the Office of the Montana Attorney General.

> "Fraud...being so various in its nature, and so extensive in it's application
> to human concerns, it would be difficult to enumerate all instances in which
> Courts of Equity will grant relief under this head." Husky,
> 1 J.Sory, Commentaries on Equity Jurisprudence §189, p. 221(6th ed. 1853).

54) 'Fraud' has been repeatedly established throughout the matters which the Montana
Attorney General, under (R) Austin Knudsen's 'Elective Franchise' ordered destroyed.
The letter in the email, thus constitutes 'Probable Cause' for the Court to issue
an arrest warrent for the arrest of each of the defendents, per 42 USC §1987|| as
attached to this complaint.

55) 'Fraud upon the Court' has also been established and waived as true, by the prior
(D) Office of the Montana Attorney Generals Administration, under Timothy Fox.

56) 'FRAUD UPON THE COURT', controlling authority:

> "Federal Rules of Civil Procedure enumerates several possible grounds for setting aside a judgement. While 60(c) sets a one year time limit for a Rule 60(b)(3) motion based upon "fraud...misrepresentation, or misconduct", Rule 60(d)(3) provides that "this rule does not limit a court's power to... set aside a judgement for fraud upon the court"...
> United States v Sierra Pac. Indus. Inc., 862 F.3d 1157,1166-1167(9th Cir 2017).

> "Thus, fraud upon the court "must involve an unconscionable plan or scheme which is designed to improperly influence the court in it's decision." Sierra Pac, at 1168; quoting Pumphrey v K.W. Thompson Tool Co., 62 F.3d 1128, 1131(9th Cir 1995); See In re Est. of Elliot, 2023 Mont. Lexis 187(MT.S.Ct 2023) at 86.

> "A court's power to grant relief from judgement for fraud on the court stems from "a rule of equity to the effect that under certain circumstances, one of which is after-discovered fraud, relief will be granted against judgement regardless of the term of their equity." Sierra Pac, at 1167; quoting Hazel-Atlas Glass Co. v Hartford-Empire Co., 332 US 238,244, 64 S.Ct 997, 88 L.Ed 1250, 1944 Dec. Comm'r. Pat 675(1944).

> "Our court and the Supreme Court have constantly applied this standard for fraud on the court even in cases involving government attorney's, rather than creating some different standard for these cases." Sierra Pac, at 1168; United States v Beggerly, 524 US 38,47, 118 S.Ct 1862, 141 L.Ed.2d 32(1998).

> 'Fraud upon the Court', must be "intentional, material misrepresentation", In re Napster, Inc. Copyright Litig., 479 F.3d 1078, 1097(9th Cir 2007).

> "Finally, relief for fraud on the court is available only where the fraud was not known at the time of settlement or entry of judgement." Sierra Pac at 1168; Hazel-Atlas, 322 US at 244(allowing relief for "after-discovered fraud").

Actual Fraud, and Constructive Fraud are defined by Montana Law, in MCA:§28-2-405, What constitutes Actual Fraud; and MCA: §28-2-406, What constitutes Constructive Fraud. The evidence which the present (R) Attorney General ordered destroyed confirmed the continued fraud on the court, in both of the State District Court cases, in the 13th Judicial District Court, DC-07-0907, and DC-14-0614, both which demonstrates the criminal acts by the County of Yellowstone, representing the State of Montana, where in each the defendents defied ADA regulations and in which the State of Montana, it's entities, and public officials CANNOT enjoy protection and immunity under the 11th Amendment, as shown in 42 USC §12202, and 28 CFR §35.178.

57) The required 'Probable cause' for the criminal arrests of the Montana defendents is the emailed letter, and the subsequent criminal acts, confirmed by other MSP employeee, and the many witnesses to what Molendyke, Elliott and Guzman illegally confiscated, which will be attached to the Demand for Criminal Complaint, herein.

> "to establish a prima facia case of actual fraud, the party asserting the claim must establish the following nine elements:
> (1) a representation; (2) the falsity of the representation; (3) the materiality of representation; (4) the speakers knowledge of the representation's falsity or ignorance of the truth; (5) the speaker's intent that the representation should be acted upon by the person and in a manner reasonably contemplated

(6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9)  the hearer's consequent and proximate injury or damage caused by their reliance on the representation."
Barrett v Holland & Hart(1992) 256 Mont. 101,106, at 106."

The Office of the Montana Attorney General, under (R) Knudsen, represented that the evidence being destroyed was proper, and it was proper to destroy the Certioari to the U.S. Supreme Court in the prison internal mail system; and the whole of the evidence in the §1983 civil suit Cv 18-056-BLG-BMM-JTJ, Ellison v Yellowstone County, et al., which was in the 'Totes' labeled "056", and with a copy of the Writ of Habeas Corpus ad Testificamdum, taped to each lid of the 'Totes'. This qualifies Fraud, and Fraud upon the Court, and Obstruction of Justice, and the other cited criminal acts. The Plaintiff's 'Third Party Compaint' in the above was biasly denied. The Montana Attorney General knew that his directive violated criminal laws, and his implication of correctness was deceptive from the State of Montana's top ranked 'Police officer', who as a licenced attorney knew better, and was aware of the law, that destruction of legally protected evidence was criminal and a violation of the Plaintiff's Civil and Constitutional Rights. Prison officials trusted in his position in the Government of the State of Montana, to guide them, as the fraudulantness and misrepresentation was written on official State of Montana, Montana Attorney General letterhead. Relying on the full power and force of the State and that office to justify violating the Plaintiff's 1st Amendment rights to redress and prohibiting retaliation for exercising these rights. §(2)-(9) are thus satisfied, and the criminality of these defendents actions is thus satisfied for criminal indictments to be put in place, as requested in this matter. These 'Overt' acts, constitute a 'Conspiracy' to defraud the Courts of Montana, and the United States, into believing a false narrative presented without any evidence at all. Thus qualifying this matter under 42 USC §§1985, 1986,1987 and 1988; as brought before the Court herein.

58) 'CONSPIRACY', Caselaw as controlling authority, in this matter, both civilly and criminally, as held in State v Houchin, 235 Mont. 179, 765 P.2d 178(MT.S.Ct 1988) at 180, also citing controlling Federal caselaw:

"Conspiracy is defined in Montana by §45-4-102."

" A person commits the offense of conspiracy when, with the purpose that an offense be committed, he agrees with another to the commission of the offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such an agreement has been committed by him or by a co-conspirator."

"The crime of conspiracy as defined above requires the presence of two elements; (1) a knowing and purposeful agreement to commit an offense, and (2) an act in furtherance of the agreement. The actual commission of the offense that is the object of the conspiracy is not required. Iannelli v U.S.(U.S. 1975) 420 US 770, 95 S.Ct 1284, 43 L.Ed.2d 616( the essense of conspiracy is an

agreement to commit an unlawful act); 16 AM.Jur.2d Conspiracy §3(in Conspiracy
law, the focus is primarily on the purpose of the conspirators: Comment,
Conditional objectives of the Conspiracy(1985); 94 Yale L.J. 895(the function
of conspiracy law is not to punish offenders for what they do, but for what
they agree to do). Ibid at 181.
Cited by State v Patel, 2017 Tenn, Crim. App. Lexis 767, 2017."

The agreement between the Montana Attorney General's Office [MT.D.O.J] and the
Warden and his staff at the Montana State Prison [MT.D.O.C.], is in the form of
a direct order, to "ensure that it is not necessary for another criminal, civil,
or administrative case.", the order demanded "the destruction or return of evidence
seized." , And where here NO evidence seized was ever returned from the 'Totes'
marked '056', designating the §1983 civil suit, Ellison v Yellowstone County, et al.,
with all of its evidence of State Criminality, it can only be held that the large
amount of documentation confirming State criminality was destroyed by that order.
A party is culpable of committing the crime of conspiracy under 18 USC §371,
Conspiracy to commit offense or defraud United States. This is exactly what the
defendents have done. Defrauded the United States, who rightfully must be named
as a Plaintiff, in the criminal portion of this complaint. 18 USC §371, states:

"If two or more persons conspire either to commit any offense against the
United States [Montana and U.S.], or to defraud the United States, or any
agency thereof [SCOTUS, and US.Dist.Ct], in any manner or purpose, and one
or more persons do any act to effect the object of the conspiracy, each shall
be fined under this title or imprisoned not more than five years, or both."

59) Thusly, grounds fo a federal indictment are met, holding the defendents culpable
now for the criminal offenses, and liable monetarily for all damages and also for
punitive damages, as seen fit by a jury.

"The fraud covered by 18 USC §371 reaches any conspiracy for the purpose of
impairing, obstructing, or defeating the lawful function of any department
of the Federal Government; therefore, no other form of injury to the Federal
Government needs to be established for the conspiracy to fall under 371."
Tanner v United States, 483 US 107, 128-29, 107 S.Ct 2739(1987).

"The conspiracies criminalized by §371, are defined not only by the nature of
the injury intended by the conspiracy, and the method used to effectiate the
conspiracy, but also — and mostly — by the target of the conspiracy."
Tanner at 130.

The target here being to destroy any evidence of State wrongdoing, and get rid of
the Plaintiff, through what is known as "death by inmate", but for Ms. Steyh.

"a defendent [All the defendents herein, and the Oregon Company, the County
officials in the '056' §1983 originally] who has joined a conspiracy continues
to violate the law, "through every moment of [the conspiracy's] existence".
Hyde v United States, 225 US 347,369, 32 S.Ct 793, 56 L.Ed.1114(1912); and
he becomes responsible for the acts of his co-conspirators in pursuit of their
common plot, Pinkerton v United States, 328 US 640,646, 66 S.Ct 1180, 90 L.Ed
1489(1946). Withdrawl terminates the defendent's liability for postwithdrawl
acts of the conspirators, but he remains guilty of conspiracy."
Smith v United States, 568 US 106,111, 133 S.Ct 714(2013).

60) 18 USC §1964, Civil Suit, under the 'Racketeering Influenced Corrupt Organization'
Act, 18 USC §§ 1961-1968 is Applicable based upon the Conspiracy, Acts of Fraud,
and inclusive of 18 USC §1958. Use of Interstate commerce facilities in the
commission of murder-for-hire. Which is a subsection of the Hobb's Act, codified
as 18 USC §§1951-1959, et seq.. In relation to the Sherman Anti-Trust Act, as
codified 15 USC §1, and the Federal Trade Commission Act, 15 USC §45,(a)(1).
The Sherman Anti-Trust Act states:

> "Every Contract, combination in form of trust or otherwise, or conspiracy,
> in restraint of trade or commerce among the several states...is hereby
> declared to be illegal."

The Conspiracy acts began with the Oregon Company[LCG Pence] who chose to hire
Cartel criminals to intimidate and halt adjudication of the civil suit the Plaintiff
and his family, and their family business filed against that company for 'Bond
Fraud' on a $1,786,000.00 contract. That civil suit will be presented to the jury,
demonstrating the 'Bad Faith' Acts, and the fact that this company had offered a
'Bounty' on the Plaintiff, which is still in effect today. Thus the Sherman Anti-
Trust Act was violated, by acts that qualify under the R.I.C.O. Act.
The Federal Trade Commission Act states: [FTC hereafter].

§(a): "Declaration of unlawfulness; power to prohibit unfair practices;
    (1) Unfair methods of competition in or affecting commerce, and unfair
        or deceptive practices in or affecting commerce, are hereby
        declared illegal."

The civil and criminal acts will be demonstrated, where the Oregon Company, planned
all along to obtain the Ellison family Construction Bond, and then NOT pay the
the family corporation, WallPro, Inc., and then claim the 'Bond'. And then bring
in a Colorado company, made up of illegal mexican labor. Many threatened the
Plaintiff and his father Claude L. Ellison, and their workers at the jobsite.
This illegal company, it was later found out was made up of MS13 and Sinaloa
gang members, who worked for the Sinaloa Cartel in Texas and other border states,
headed up by the notorious 'El Chapo' Guzman. The uncle to Marco Guzman, who along
with MSP Sgt. Molendyke, and Sgt. Elliott destroyed all of the Plaintiff's '056'
evidence in the 'Totes'. The relationship and nexus between the Sinaloa Cartel
man Carlos Molina, and Yellowstone County Frank Fritz, has been established, and
conceded to and waived by the prior Montana Attorney General, (D) Timothy Fox's
Administration. These, 'Corrupt' Acts by the defendents as a whole, establish
R.I.C.O., through the racketeering methods used by the State of Montana, and
Yellowstone County, as a 'Criminal Enterprise'. Evidence will be presented from a
prior State of Montana investigation and report, which confirms the collusion
between the Plaintoff's ex-wife, Rhonda Mae Quarters and Yellowstone County
Detective Frank Fritz.

61) Controlling Racketeering caselaw, holds as authority in 18 USC §1958, that:

"To be convicted of violating §1958(a) an offender must (1) have traveled or
caused another to travel in interstate commerce, or used or caused another
to use an instrumentality of interstate or foreign commerce, or conspired
to do all the same: (2) have done so with the intent that murder be committed;
and (3) have intended that the murder be committed in exchange for something
of pecuniary value."
United States v Linehan, 56 F.4th 693, 707(9th Cir. 2022); United States v
Phillips, 929 F.3d 1120,1123(9th Cir. 2019).

62) Controlling 18 USC§1512 caselaw holds:

"by attempting to kill a witness in violation of 18 USC §1512(a)(1), qualified
as a predicate offense for his conviction...Attempted killing under §1512(a)(1)
was a crime of violence as defined by §924(c)(3)(A) because it required proving
defendent untentionally used or attempted to use physical force against another...
in context of the definition of "physical force" under 18 USCS §1515(a)(2),
a crime of violence is defined as a felony offense that has an element the
use, attempted use, or threatened use of physical force against a person...
substantial risk of physical force against the person...may be in the course
of committing the offense."
Dorsey v United States, 76 F.4th 1277(9th Cir. 2023).

"Section 1512(a)(2) criminalizes Witness Tampering by "whoever uses physical
force...the threat of physical force against a person, or attempts to do so,
with intent to "influence, delay, or prevent testimony of any person in an
official proceeding."

Thus the defendents as a whole conspired to commit the above criminal acts, by
placing the Plaintiff into a known deadly situation, and continue to do so. If
not for Ms. Steyh at CCC, the Plaintiff would have been dead by "inmate", a common
tactic in the Montana penal system, and has occurred in other prisons.

## VII. COMPLIANCE.

63) The Plaintiff is a Pro se litigant, and asks that the Court review this complaint,
in a "less stringent standard" of review, than afforded a licenced attorney. See
Haines v Kerner, 404 US 519,520, 92 S.Ct. 594,595, 30 L.Ed.2d 652(1972).

64) The Plaintiff has tried his best at complying with Rule 8(a), of the Federal Rules
of Civil Procedure. 8(a) requires a short and plain statement showing that this
pleading is entitled to relief, and that the Plaintiff state his demand for relief,
which may include relief in the alternative or different types of relief.

65) Plaintiff also asks that the Court order mediation between himself and Deputy
County Attorney for Yellowstone County, Melissa Williams. Ms. Williams being the
only representative of the defendents, which the Plaintiff, as a ADA deaf inmate
has any relationship with, and who is reasonable.

66) This complaint contains factual matter which is true and has been accepted by the
Court, as being true. This factual matter and evidence is of record in the Courts,
and has been accepted as such by the prior Montana Attorney General (D) Timothy
Fox; whose Sr. Deputy Mark Fowler, conceded and waived a great amount as true.

67) The Pro se Plaintiff Ellison has attempted to comply with the standards and principles
of law as required by the Supreme Court that:

"A complaint must contain sufficient factual matter, accepted as true, to
"state a claim to relief that is plausible on it's face."

"A claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable interference that the defendent is
liable for the misconduct alleged."
Ashcroft v Iqbal, 556 US 662, 129 S.Ct 1937,1949, 173 L.Ed.2d 868(2009).

"When factual allegations are well-pled, a court should assume their truth
and determine whether the facts make the plaintiff entitled to relief."
Ashcroft at 1949.

68) 42 USC §1983, Civil Action for deprivation of Rights.

"is a method of vindicating federal rights elsewhere confered"; Albright v

Oliver, 510 US 266,271, 114 S.Ct 807, 127 L.Ed.2d 114£1994•.

This federal means protects any citizen or other person within the jurisdiction
of federal Courts and in the United States from deprivation of any "rights, priveleges,
or immunities secured by the Constitution and laws" of the United States.
The Plaintiff has made his claims clear, that the Plaintiff is wrongfully convicted
as waived by the prior (D) Montana Attorney General and Deputy Yellowstone County
Attorney Julie Mees, who has legally waived that the Plaintiff's Double Jeopardy
Rights prohibit the continued prosecution in this matter, and thusly the underlying
criminal charges are void, and that under Article III, of the Constitution, there
is no case or controversy, and that these underlying convictions must be vacated
and dimissed with prejudice. And that the Plaintiff be immediately released from
an illegal sentence and incarceration, depriving the Plaintiff of the Liberty that
is guaranteed by the Constitution, forbidding this cruelty.[See attached Motion].

69) 42 USC §1985, Conspiracy to interfere with civil rights.

"The elements which must be alleged in order to state a cause of action under
42 USCA §1985(3) were concisely stated in Huey v Barloga. N.D.III, 1967, 277
Supp. 864, 868, as follows:

The elements neccessary for a cause of action under the section are
(1) a conspiracy by the defendents, (2) with a purpose of depriving the
plaintiff of equal protection of the laws or equal priveleges and
immunities under the law, (3) a purposeful intent to discriminate,
(4) action by the defendents under color of state law or authority, and
(5) injury to the person or property of the plaintiff or his deprivation
of a right or privelege as a citizen of the United States resulting from
actions in furtherance of the conspiracy."
Granville v Hunt, 411 F.2d 9, 11(5th Cir. 1969)
§1985(2):
"A claim under section 1985(2), part one, is composed of three essential elements
(1) a conspiracy between two or more persons, (2) to deter a witness by force,
intimidation, or threat from attanding federal court or testifying freely in
a matter there pending, which (3) causes injury to the claimant."
David v United States, 820 F.2d 1038,1039-40(9th Cir 1987);
Miller v Glen & Helen Aircraft, Inc., 777 F.2d 496,498(9th Cir 1985);
Rutledge v Arizona Bd. of Regents, 859 F.2d 732,735(9th Cir. 1988);

70) 42 USC §1986, Action for neglect to prevent conspiracy.

> "Every person who, having knowledge that any of the wrongs conspired to be done,
> and mentioned in the preceding section [42 USCS §1985], are about to be committed,
> and having power to prevent or aid in preventing the commission of the same,
> neglects or refuses do to do, if such wrongful act be committed, shall be
> liable to the party injured, or his legal representatives, for all damages
> caused by such wrongful act, which such person by reasonable diligence could have
> prevented; and such damages may be recovered in an action on the case, and any
> number of persons guilty of such wrongful neglect or refusal may be joined as
> defendents in the action, and if the death of any party be caused by any such
> wrongful act and neglect, the legal representatives of the deceased shall have
> action therefor.

Based on the upcoming June 20, 2024, meeting with the Yellowstone County Deputy
Attorney, Melissa Williams, §1986 wil be applicable, as concerning the ADA statutes
cited to her, as a representative of Yellowstone County.

71) 42 USC §1987. Prosecution of violation of certain laws.

The Plaintiff will be requesting the Magistrate assigned to this action, to consider
issuing an arrest warrant for the individual defendents herein, based upon the
evidence attached to that request, as being probable cause. The documentation
of probable cause presented will be the email and letter from the Montana Attorney
General (R) Austin Knudsen's Office, to Warden Jim Salmonsen; and including the
documentation that MSP U/M Ben Bouley confirms the theft of the Plaintiff's evidence
as illegally confiscated by Sgt. Molendyke, Sgt. Elliot and Inmate Guzman. Copies
of multiple witness statements will be included, as well as the MSP disposition
from MS Disiplinary, which proves that the Plaintiff was found 'NOT GUILTY' of the
fraudualnt disiplinary complaint by Molendyke and Elliot,when the Plaintiff was
placed in the MSP "HOLE" for 4 days until MSP DHO Dennis Johnson found the Plaintiff
'NOT GUILTY', and released the Plaintiff from the "HOLE". This is clear 'Fraud',
'Tampering with Evidence' [5 witness statements will be presented, confirming that
Molendyke, Elliot, Guzman and another emptied the 2 'Totes' & to remove protected
evidence. The same evidence that was not returned, hence destroyed at the order
of the Montana Attorney Generals Office, through defentents Moody and Knudsen.]
Probable Cause will be established with the complete pleadings of Cv 18-056-BLG-
BMM-JTJ, Ellison v Yellowstone County, et al; now being evidence for the jury to
see 'Why' the defendents have committed these criminal offenses.

72) The Plaintiff also cites violations to the criminal offenses previously named,
as proper under 18 USC§241; CONSPIRACY AGAINST RIGHTS, and 18 USC §242, Deprivation
of rights under the color of law as applicable, both civilly and criminally, as
a cause for relief, as required under 18 USC §246 Deprivation of relief benefits,
in relation to 42 USC §245, Federally protected activies. §(b)(1)(3),(4),(5).
Since 2007 to present the actions of the defendents can only be described as
'Hate Crimes'.

73) As a result of the defendants unlawful and malicious actions and total disregard
for the rights, priveleges, benefits and immunities afforded to all persons under
the Americans with Disabilities Act of 1990, by depriving the Plaintiff of his
Constitutional Rights as cited, and in violation of many civil and criminal
statutes cited also herein, done intentionally and with deliberate indifference
to those rights and to the 'Rule of Law', with callous disregard of the Plaintiffs
Liberty, without Due Process of Law; depriving the Plaintiff of the Equal Protection
of those laws, to maintain the documented and waived denial of right.The Plaintiffs
Civil Rights have been denied and neglected by malfeasance, misfeaseance in public
office, and nonfeasance by the individual defendants, and the State of Montana, and
Yellowstone County, as represented by these individual defendants, who have admitted
to violating the laws of the United States, and which the State of Montana CANNOT
enjoy immunity, as cited in 42 USC §12202 and 28 CFR§35.178. This lack of immunity
extends to any time limitation bars that protects the defendants from culpability
for their continued conspiracy acts, now proven and documented. The present Montana
Attorney Generals Office, under (R) Austin Knudsen, is actually in default for a
sum certain amount, which will also be claimed, due to his continued failure to
respond to the Plaintiff's 'Request for Admissions'.

74) Acting under the 'Color of Law' the Supervising defendants, both named and as John
Doe defendants in the Executive Office of Montana, and pursuant to what must be
described as a unwritten "official custom and policy" for the State of Montana and
Yellowstone County have shown a knowingly, recklessly and deliberate indifference
to the 'Rule of Law', and with callous disregard to the Plaintiffs Rights, Health
and Safety as a ADA deaf citizen, by failure to instruct, supervise, control and
disipline wrongdoing continuously, by officers of the badge, bar and bench, who do
NOT know the Law, and requirements involved when adjudicating a deaf citizen and
now prisoner. Denying the Plaintiff a TTY phone since 2007, and denying the Plaintiff
a qualified interpretor in any official proceeding, including Parole hearings, thus
violating Plaintiffs Constitutional Rights, where the State must refrain from:

1) unlawfully and maliciously harass the Plaintiff and violate the rights of a
ADA citizen in accordance with the constitutional and statutory rights, priveleges
and immunities afforded the Plaintiff, as required by Law, as a ADA citizen.

2) unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who
is almost completely deaf, such as the Plaintiff, without the proper ADA benefits
and accomodations, as prescribed by law.

3) unlawfully and maliciously directing public officials to destroy the Plaintiffs
evidence and ADA hearing aids, to "ensure" that the Plaintiff CANNOT participate
in another "criminal, civil, or administrative case." This includes Parole hearings.
These quotes are direct from the Office of the Montana Attorney General.

--32--

4) Conspiring to act with the assistance of other officials and government agencies
to violate the rights, privileges and immunities "guaranteed" the Plaintiff by
Congress, and the ratification of the Americans with Disabilities Act of 1990;
and as guaranteed to the Plaintiff by the Constitution of the United States and
the laws of both the United states and the State of Montana. The State of Montana
ADA laws are codified under Title 49, Human Rights; Chapter 2, Illegal discrimination;
Part 3 Prohibited Discriminatory Practices. §49-2-301, Retaliation prohibited;
§49-2-308, Discrimination by the State; Part 2, Rights of the Physically Disabled
(§§ 49-4-201— 49-4-222); Part 5, Interpreters for the Deaf in Official Proceedings,
(§§49-4-501— 49-4-511).

5) The above individual defendants, acted both indiviually and jointly to cause the
Plaintiff to suffer everyday from physical injury, loss of income, loss of property
loss of loved ones [who needed my assistance], and declined health due to the
lack of quality health care, including the daily mental anguish associated with
the State of Montana knowing of the 'Bounty' placed on the Plaintiff, [This
is especially true, while the Plaintiff was illegally transfered to the private
prison in Shelby, Montana; Crossroads Correctional Center, owned by CoreCivic,
Brentwood, Tennessee].The State has deprived the Plaintiff of his professional
standing, as an owner of two construction companies, with his family, including
a wall manufacturing factory in Lockwood, Montana; employing up to 40 employees
at times, between the two Ellison family corporations.

75) The Plaintiff, Lionel Scott Ellison, has no plain or adequate or complete remedy
at law, to redress the wrongs described and waived herein, other than through the
adjudication in a court of law, before a jury of his peers. The Plaintiff has found
and will continue to be irreparably injured by the conduct of the defendants, by
their malfeasence, misfeasence in public office, and nonfeaseance in relation to
these matters as a whole; unless this court grants the declaratory and injuctive
orders for relief, and restraint against further physical and mental anguish and
pain, which the Plaintiff seeks.

76) The Plaintiff wishes to cite caselaw, as relevant to the misconduct herein, by the
defendants, which was in the pleadings in which the defendants confiscated and
destroyed, and was what the defendants did NOT want exposed to outside public.

> "In our system of government, as the Court has often stated, no one is above
> the law." See Trump v Vance, 140 S.Ct. 2412, 2432, 207 L.Ed.2d 907(2020).

> "In a government of laws, existence of government will be imperilled if it
> fails to observe the law scrupulously. Our Government is potent, the omnipresent
> teacher. For Good or for ill, it teaches the whole people by example. Crime
> is contagious...To declare that in the administration of the criminal alw,
> the end justifies the means--would bring terrible retribution." Olmstead v
> United States, 277 US 438, 485, 72 L.Ed 944, 48 S.Ct 564(1928).

## VIII. PRAYER FOR RELIEF.

WHEREFORE, the Plaintiff, Lionel Scott Ellison, respectfully prays: Here, that the Court enter the following Judgement, and grant the Motions for Injunctive Relief, as proper, in the 'Interest of Justice'.

77) Granting the Plaintiff, Ellison herein, a declaration that the acts and omissions by the defendents, as described herein, violate and deny the Plaintiff of his Constitutional and Statutory Rights cited herein, both by State and Federal Laws, governing this matter; inclusive of the Constituional Rights violated and denied, under the American's with Disabilities Act; of 1990.

78) That the Court issue an immediate injunctive order, directed to the defendents, the Montana Attorney General Austin Knudsen, to abide by the Rules of Professional Conduct, Rule 3.4 and 3.8, as cited; in that he find immediate "REMEDY" to the present wrongful conviction of the Plaintiff, as previously waived by the prior (D) Montana Attorney Generals Office, as shown to the Court multiple times, in the State Post-Conviction proceedings. This injuctive relief is proper, to order the present (R) Montana Attorney General to obey the law, his duties and obligations as the State's highest ranking "police Officer". See attached Motion.

79) That the Court issue an immediate temporary restraining order, ordering the defendents and any known associates to cease and desist, from further unconstitutional acts, retalitory acts, threats of further physical violence and unjust punishment toward the Plaintiff, Lionel Scott Ellison. That the Court order the immediate transfer of the Plaintiff, from the custody of Defendent Warden Salmonsen, to the custody of the U.S. Marshal's assigned to this court, and into protective custody by the United States Attorney General's Office. That this order places a guarantee of protection against further criminal behavior from the defendents, and any other Cartel, or criminal enterprises, under the direction of the defendent, the State of Montana, it's entities, or employed individuals.

80) That the Court grant to the Plaintiff Ellison, a proper judgement for Compensary damages, and physical and mental damages, to this point and the future; against the Defendents now named, and John Doe Defendents to be named,[and Jane Doe defendents], the Defendents Supervisors, and the Defendent State of Montana, and County of Yellowstone, as municipal entity of Montana, jointly and severally the Compensatory damage amount of $50,000,000.00, with further demands of judgement against each defendent individually and professionally, [except Montana and Yellowstone County], jointly and severally for the punitive damages of $5,000,000.00 from each of these defendents, plus the costs of this action and such other relief as this Court shall also deem just in addition to the amounts as relief, as equitable in the name of Justice; which by Law, under 18 USC §1964(c) shall be 'Threefold'.

81) Plaintiff, Lionel Scott Ellison, seeks a jury trial on all issues triable by jury, suing, individual defendents, also in their personal and official capacity.

82) Plaintiff Ellison also seeks recovery of all of his physical and personal assets lost due to the acts and omissions of the defendents, as well as all court costs, and any attorney costs for this suit, and it's possible subsequent matters.

83) Plaintiff requests that the court order a mediation immediately, between the Plaintiff and Deputy Yellowstone County Attorney, Melissa Williams, to represent all of the defendents.

Dated this 20th day of June, 2024.

Respectfully submitted by Plaintiff:
Lionel Scott Ellison, Pro se litigant.
700 Conley lake Rd.
Deer Lodge, Montana   59722

## VERIFICATION

I, Lionel Scott Ellison, have read the foregoing complaint and hereby verify that the matters alleged therein are true, that the details as incorporated into this Complaint from Cv 18-056-BLG-BMM-JTJ, Ellison v Yellowstone County, et al., and all of the pleadings and evidence therein also incorporated to this complaint, are true and the exhibits incorporated and attached are true and accurate. All matters are true except matters alleged on information and belief, and to those, I believe them to be true. I certify that I have repeatedly tried to send through both MSP and CCC internal prison mail, documents to the following, and in which were NOT mailed, and repeatedly confiscated and destroyed:

1) The United States Supreme Court; Washington, DC.
2) The Ninth Circuit Court of Appeals; San Francisco, CA.
3) The Office of the United Nations High Commision for Human Rights. Geneva, Switzerland, [CH-1211 Geneva 10, see www. ohchr.org]
4) The Montana Department of Labor, Human Rights Department.
5) The U.S. Attorney Generals Office, USDOJ, Washington, DC.
6) Well over a hundred attorney's in America. [MSP Sgt. Olhausen was fired by Defendent Jim Salmonsen, for Olhausen's complaint and writting a statement for the Court.].
7) To well over 20 mailings to Montana and US Senators/ Presidents. There is much more that was censored, and the Plaintiff has not been allowed to call anyone for many years. Neither MSP or CCC, has a working TTY phone for the deaf. Neither did the Yellowstone Detention Facility, in Billings, Montana, when asked for in 2007.

I, Lionel Scott Ellison, certify under penalty of perjury that the foregoing is correct and corroborated by the exhibits to be submitted as discovery, and per the pleadings and evidence in Cv 18-056-BLG-BMM-JTJ, Ellison v Yellowstone County, in the custody of the Clerk Court, for this Court, as exhibits for what was confiscated and then destroyed by the defendents.

This verification is per 28 USC §1786, where "I declare under penalty of perjury that the foregoing is true and correct". See also 20 USC Also, per 18 USC §1621.

This complaint was deposited into the prison e-file filing system on the following date. The Plaintiff asks that the Clerk be aware that Copies, will be requested [defendents] upon notification by Plaintiff. Dated on 20th of this Month of June, 2024. *Lionel Scott Ellison*

Lionel Scott Ellison.